## WHITE v. GLOVER.

---

EQUITY; FRAUDULENT CONVEYANCES; EVIDENCE.

In a creditor's suit in equity to set aside certain alleged fraudulent con-
veyances of real estate, by the debtor to her sisters, based upon a
foreign judgment which the debtor claimed was void as having been
rendered without personal service upon her, and upon the unauthor-
ized appearance for her by her husband, from whom she had separated,
and which she also claimed could not be made the basis of a creditor's
suit here in that the claim represented by it had not been reduced to
judgment here, and the debt represented by it had not been con-
tracted here, and the debtor was not a resident of this District, the
questions so raised were not considered, and a decree of the court
below dismissing the bill was *affirmed,* upon the ground that every
inference that might under certain circumstances be drawn from the
near relationship of the parties to the alleged fraudulent conveyance
was rebutted by positive evidence of the unfriendly relations of the

parties to the deed at the time it was made,—it appearing that the
grantor was largely indebted to the grantees, that they believed her
indebtedness to them was greater than the value of her interests in
the estate conveyed, that it was made to settle a vexatious litigation
between them, and that the only consideration for it was a settlement
of $25,000 in trust for the benefit of the grantor's children under cer-
tain conditions.

No. 1342. Submitted March 11, 1904. Decided April 5, 1904.

HEARING on an appeal by the complainant from a decree of
the Supreme Court of the District of Columbia dismissing a bill
in equity to set aside alleged fraudulent conveyances of land.
*Affirmed.*

The COURT in the opinion stated the case as follows:

The appellant, Edward White, began this suit in the supreme
court of the District of Columbia, on August 10, 1901, to obtain
a decree annulling two conveyances of land alleged to have been
made by Augusta Patten Glover to her codefendants with intent
to hinder, delay, and defraud the creditors of the grantor.

By one of these deeds made February 7, 1901, said Augusta
Patten Glover conveyed to her sisters, Josephine A., Mary E.,
Edith A., and Helen Patten, her interest in all of the lands,
wherever situated, of which their mother, Mrs. Anastasia Pat-
ten, had died seised and possessed. The grantor and grantees
being the only heirs at law, the said interest so conveyed is one
fifth. These lands are described in the bill by square and lot
as situated in the city of Washington. By the second deed, made
July 15, 1901, one lot, held by grantor under an independent
title was conveyed to the defendant Shands.

A decree dismissing the bill was passed March 30, 1901, and
the appeal therefrom includes all of the defendants; but in so
far as appellee Shands is concerned no reversal has been urged.
Consideration, therefore, is confined to the deed made to the
Misses Patten. The following facts, offered to establish com-
plainant's right as a creditor, appear in a transcript of the pro-
ceedings of the circuit court of the city of St. Louis, in the

State of Missouri. On May 9, 1898, Edward White began suit in said court against Augusta Patten Glover to recover upon two promissory notes for the sum of $5,400 each, executed by her in New York, on February 12, 1895, to the order of John M. Glover; said notes were payable in one year, with interest from date at the rate of 6 per cent per annum, recite that they are a charge upon the separate estate of the maker, and were indorsed by said John M. Glover and delivered to said White for value. Process issued May 9, 1898, and the sheriff's return thereon shows its execution in St. Louis, on May 14, 1898, "by leaving a copy of the writ and petition as furnished by the clerk, for Augusta Patten Glover, defendant herein, at his usual place of abode with a person of his family over the age of 15 years."

On May 20, 1898, an appearance was entered to the June term for the defendant by John M. Glover as her attorney. During the term an answer was filed in her name by the same attorney, which was amended March 13, 1899. May 23, 1899, a trial was had, resulting in a judgment for the plaintiff for the sum of $13,573.80 besides costs of suit. On June 12, this judgment was vacated and a new trial ordered because the trial court committed error in admitting testimony showing the law of New York relating to the contracts of married women without the same having been pleaded.

On March 20, 1901, plaintiff filed an amended petition, setting out the New York statute relied upon, of which personal service could not be had, because neither the defendant nor John M. Glover could be found in St. Louis. Pursuant to the rules of the court made under statutory authority, service was then made by posting a copy of petition and writ in the clerk's office for a sufficient period. No subsequent appearance was made by any one for the defendant, and judgment was entered against her on May 22, 1901, for $14,870.60, besides costs of suit, with award of execution. No execution appears to have been issued.

The attorney who brought the suit and directed the service of process by leaving a copy for the defendant at the West End Hotel, in St. Louis, testified to having seen the defendant about

that time in St. Louis with her husband, John M. Glover. Other testimony was offered to show that the Glovers had made their home in the hotel named for some years before.

Mrs. Augusta Patten Glover, who was called as a witness by the complainant, testified on cross-examination, that she left St. Louis about the last day of April, or first of May, 1898, and had never returned; that John M. Glover was her husband, but not her attorney, and was not authorized to appear for or to represent her in any suit upon the notes held by White; that she had never heard of the institution of said suit or of any proceeding therein, and was unaware of the existence of any judgment until she was told of the institution of an action upon the same in the District of Columbia. She further said that she had not seen John M. Glover but once since her departure from St. Louis, and that was in December, 1898.

It appears that on August 3, 1901, an action was begun against Augusta Patten Glover in the supreme court of the District of Columbia, upon the judgment aforesaid, on which original, alias, and pluries summons were issued and returned unserved because the defendant could not be found. Some days after this action was begun, and before the return of the original summons, the present bill was filed. It was also shown that Augusta Patten Glover has not resided in the District of Columbia since her marriage to John M. Glover in 1887, and that she now lives in the State of Rhode Island.

The bill alleges that she has no property subject to execution in the District of Columbia, and that she is wholly insolvent. Her answer admits that she has no property in the District, but denies that she is insolvent. There is no proof that she has no property in Rhode Island where she now resides.

*Mr. Clayton E. Emig* and *Messrs. Dudley & Michener,* for the appellant:

1. The deed of February 7, 1901, is void, because it undertakes to transfer to the grantees all her right, title, and interest in the estate of Mrs. Patten, which constituted her sole prop-

erty,,creating an illegal preference, in violation of the act of
Congress of February 24, 1893 (2 Rev. Stat. Supp. 90), in
force in this District at the institution of this suit.

2. The assignment, being voluntary, is void under § 2 of the
act of Congress approved February 24, 1893, which reads as
follows: "Sec. 2. That every provision in any assignment here-
after made in the District of Columbia, providing for the pay-
ment of one debt or liability in preference to another, shall be
void, and all debts and liabilities within the provisions of the as-
signment shall be paid *pro rata* from the assets thereof." *Stras-
burger* v. *Dodge*, 12 App. D. C. 37; *White* v. *Cotzhausen*, 129
U. S. 329; *Kellog* v. *Richardson*, 19 Fed. 70; *Martin* v. *Haus-
man*, 14 Fed. 160. The spirit and letter of the act of February
24, 1893, was to prevent a debtor to transfer *all* of his property
to pay one or more creditors, and thereby defeat the rights of
others.

3. The evidence submitted by the complainant established a
prima facie case and shifted the burden of proof on the defend-
ants. The badges of fraud, such as close relationship, lack of
consideration, knowledge of the grantor's indebtedness, lack of
knowledge as to extent of property conveyed, transaction made
after recovery of judgment—all these are suspicious circum-
stances and place upon the defendants the burden of proof.
*Venable* v. *Bank*, 2 Pet. 107; *Jones* v. *Simpson*, 116 U. S. 609;
*Crawford* v. *Neal*, 144 U. S. 585. Deed surrounded with sus-
picion must exhibit good consideration as against creditors.
*Callan* v. *Statham*, 23 How. 477. There must be clear proof
of good faith. *De Walt* v. *Doran*, 21 D. C. 163; *Clements* v.
*Moore*, 6 Wall. 315. Circumstantial evidence of fraud or want
of good faith cannot be sworn away by the answers of the de-
fendants in equity. *Hendricks* v. *Robinson*, 2 Johns. Ch. 300;
*Bowden* v. *Johnson*, 107 U. S. 251; *Walter* v. *Lane*, 1 MacArth.
280. Direct proof of a fraudulent purpose or act is not required.
*De Walt* v. *Doran*, 21 D. C. 163; *Singer* v. *Jacobs*, 11 Fed. 559.
Where the testimony shows the husband has an interest in the
property jointly with the wife, but fails to disclose that inter-
est, a court of equity will require an account to be taken to de-

termine his interest. *Turner* v. *Gottwals,* 15 App. D. C. 43. The attorneys for the parties to the deed did not testify in support of the bona fide transaction set up in the answers. They are alleged to have known all the facts. Why did they not testify? This omission is absolutely fatal. The following cases declare such a transaction void: *Clark* v. *McGeihan,* 25 N. J. Eq. 423; *Enders* v. *Swayne,* 8 Dana, 103; *Bartless* v. *Gibson,* 17 Fed. 293; *Venable* v. *Bank,* 2 Pet. 107; *Hoboken Bank* v. *Beckman,* 36 N. J. Eq. 83; *Embury* v. *Klemm,* 30 N. J. Eq. 524; *Hubbard* v. *Allen,* 59 Ala. 300; *Corbiener* v. *Montgomery,* 66 N. W. 900; *Johns* v. *Campbell,* 84 Iowa, 557.

*Mr. Henry P. Blair* and *Mr. Corcoran Thom* for the appellees.

*Mr.* Justice SHEPARD delivered the opinion of the Court:

1. Founded on the facts disclosed by the record, in so far as stated above, the appellees have submitted certain points of contention, any one of which, if well taken, would require the decree to be affirmed without regard to the remaining facts which relate to the transactions between the appellees, because the result would be to destroy the standing of the complainant as a creditor having the right to inquire into and challenge the conveyance of property made by an alleged insolvent debtor. These are: (1) The circuit court of the city of St. Louis in the State of Missouri was without jurisdiction to render a personal judgment against Augusta Patten Glover; (2) the supreme court of the District of Columbia, holding sessions in equity, is without jurisdiction to entertain the bill, because the complainant has not reduced his claim to judgment in an action at law in the said District; (3) if reduction to judgment be not necessary to jurisdiction in equity under the conditions disclosed, it is still wanting, because it appears that the debt was not contracted in the District, that defendant is the resident of another State, and it is not alleged that she has no property subject to execution in that State. We shall not consume time with the consideration

of these interesting questions, because, in view of our conclusion in respect of the evidence relating to the alleged fraudulent purpose of the conveyance, the cancelation of which is the object of the bill, their determination is unnecessary.

2. Assuming, then, the validity of the judgment of the Missouri circuit court, as well as the jurisdiction of the supreme court of the District of Columbia, to entertain the bill, we are of the opinion that the decree must be affirmed because of the want of evidence to sustain the charge of fraud.

Conceding what is not proved by any direct evidence, but may possibly be inferred from all the circumstances, namely, that Mrs. Augusta Patten Glover has no visible property which might be subjected to process for the collection of complainant's debt, still there is no proof that she conveyed her interest in her mother's landed estate with an actual intent to hinder, delay, or defraud her creditors.

It is not shown that she is indebted to any one but the complainant. The notes held by him were executed nearly six years before, at the request and for the benefit of her husband, John M. Glover, and she was not aware that they remained unpaid, or had been sued upon.

Whether she was actually in St. Louis on May 14, 1898, or not, the return upon the writ issued in that suit shows that personal service was not had upon her. She has lived apart from her husband since that time, and has only seen him once. Granting, as has heretofore been assumed, that he had the implied power to enter an appearance for her in said suit, and that that appearance was sufficient to justify the judgment against her on the amended petition without further service on either her or him, yet the fact remains that she had no actual knowledge that the notes remained unpaid or that the action had been brought upon them.

The deed, though reciting the nominal sum of $10 as having been paid, which is quite usual in this District, was made for what has been shown to be a valuable and adequate consideration.

Mrs. Anastasia Patten was the mother of grantor and

grantees, who were her only children and heirs at law. She
died in 1887 or 1888, possessed of a considerable estate consist-
ing of real and personal property. This she undertook to devise
and bequeath to her said daughters, naming them as executors.
This will, whilst sufficient to pass personal estate, was not exe-
cuted in the manner required to pass the realty.

Litigation arose between Mrs. Glover on one side and her four
sisters on the other, a branch of which was brought by appeal
to this court, and afterwards carried to the Supreme Court of the
United States. The controversy was whether an advance made
to Mrs. Glover upon her marriage in 1887 should be charged
against her in the distribution of the personal estate.

Portions of an account filed by the four Misses Patten as
executors, on April 27, 1898, after the termination of the branch
of litigation above mentioned, were offered in evidence by the
complainant. From this it appears that Mrs. Glover was then
indebted on account of advancements in the sum of $108,649.15.
Mrs. Glover was not a party to this account, though she claimed
to be one of the executors of the estate still, and the same re-
mained unsettled on account of litigation still pending between
her and her sisters. During these intervening years she had con-
veyed her interest in certain parts of the real estate, receiving
therefor about $95,000. The total value of the real estate left
by Mrs. Anastasia Patten was probably $500,000, or something
over. In the course of the general litigation between the parties
concerning the administration and distribution of the estate,
Mrs. Glover had given a bond or bonds, and to secure her sure-
ties thereon had given them a deed of trust for $250,000, cov-
ering her interest in the said real estate.

The relations between Mrs. Glover and her four sisters were
strained and there were and have been no friendly interchanges
between them since the litigation began. Because of these condi-
tions and the trust deed aforesaid the Misses Patten were un-
able to divide or sell any part of the real estate, and were nat-
urally anxious to end the vexatious litigation. The arrange-
ment for the sale of Mrs. Glover's interest in the lands conveyed
by her deed of February 7, 1901, were consummated by the at-

torneys of the respective parties. Mr. Parsons, of New York, and Mr. Bernard Carter, of Baltimore, represented Mrs. Glover's interests. The first proposition made by Mr. Parsons for Mrs. Glover was for a settlement and the sum of $50,000 in cash. This was declined. The Misses Patten, claiming all the time that Mrs. Glover owed them more than the value of her interest in the lands, and declining to pay her any money, finally agreed to pay over the sum of $25,000, to be held in trust for the benefit of the children of Mrs. Glover under certain conditions. Several months were consumed in these negotiations, and the reasons which induced Mrs. Glover to accept the final offer are thus stated by her: "I had an idea that I had a certain undivided interest in the estate of my mother. My sisters claimed that I did not. My counsel found that my indebtedness was probably greater than my interest in the estate, and they advised me to make as good a settlement as I could. They tried to get $50,000 for my interest and I was to give up all litigation. But my sisters would not give it; would not give anything. But they agreed to put $25,000 in trust for the maintenance and support of my children, I to get the money during their life for their support; at the death of the children, at a certain age, it was to return to my sisters."

Were it conceded, however, that the circumstances would justify an inference that the grantor's motive in effecting the sale was to prevent the enforcement of the complainant's debt, the evidence clearly shows that her grantees had no knowledge of such intent, and acquired title in good faith.

Every inference that might under certain circumstances be drawn from the near relationship of parties to a conveyance assailed as a fraud upon creditors, is rebutted by positive evidence of the unfriendly relations of the parties to this deed.

It appears that the grantees believed that the grantor's indebtedness to them was greater than the value of her interest in the landed estate. They were willing to accept the conveyance in complete settlement, but would not pay anything in addition. In order, however, to settle the vexatious litigation and to remove all obstacles in the way of the complete control and enjoy-

ment of the estate, they agreed to the settlement of the trust for
$25,000. Her counsel, upon inquiry into the situation, con-
curred in the view that her indebtedness was probably greater
than the value of her interest, and advised the settlement after
ascertaining that nothing additional could be obtained. More-
over, during the entire negotiation the grantees had no knowl-
edge of the grantor's indebtedness and no fact has been brought
home to them that would tend to put them upon inquiry into
the grantor's solvency, or to suggest a possible intention on her
part to hinder, delay, or defraud the complainant or other pos-
sible creditors.

The decree must be affirmed with costs; and it is so ordered.

*Affirmed.*